IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

DOUGLAS JEFFERY HARLESS, SR.,

    Debtor.

VISION BANK and SE PROPERTY
HOLDING, LLC.,

    Plaintiffs.

vs.

DOUGLAS JEFFERY HARLESS, SR.,

    Defendant.

BK 11-71761-CMS

AP 11-70045

## MEMORANDUM OPINION

This adversary proceeding came before this court on November 8, 2012, for hearing on the Motion for Summary Judgment filed by Douglas Jeffery Harless, Sr. ("Debtor"). Thomas W. Powe, Jr., appeared on behalf of Debtor; Richard M. Gaal appeared on behalf of Vision Bank and SE Property Holdings, LLC (collectively, "the Plaintiffs"). After reviewing the evidence and the arguments of the parties, this court **DENIES** Debtor's Motion for Summary Judgment.

## JURISDICTION

The district court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(a) & (b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Court for the Northern District of Alabama, signed July 16, 1984, as Amended July 17, 1984 pursuant to 28 U.S.C. § 157(a). The bankruptcy court may enter an appropriate order

1

and judgment pursuant to 28 U.S.C. § 157(b)(I).

## FINDINGS OF FACT

Debtor was the owner of a house and lot located on Ono Island in Baldwin County, Alabama ("Ono Island Property"). Debtor's former business, Harless Development Company, Inc., was the owner of a parcel of property located in Baldwin County, Alabama known as the Magnolias Subdivision. Both properties were subject to one or more mortgages held by Plaintiff Vision Bank.

On June 28, 2010, Plaintiff Vision Bank filed a Complaint in the United States District Court for the Southern District of Alabama seeking a judgment as to certain promissory notes executed by and/or guaranteed by Debtor, Debtor's wife, and Debtor's former business.

On or about July 22, 2010, Plaintiff Vision Bank conducted a foreclosure sale as to its mortgage(s) on the Magnolias Subdivision.

On September 2, 2010, Plaintiff Vision Bank conducted a foreclosure sale as to its mortgage(s) on the Ono Island Property.

On September 14, 2010, Debtor, Debtor's wife, and Debtor's former business filed their Amended Answer and Counterclaim alleging, among other things, unlawful foreclosure as to both the Magnolias Subdivision and the Ono Island Property.

On September 20, 2010, Plaintiff Vision Bank filed a Second Amended Complaint seeking an order of ejectment as to the Ono Island Property.

On August 5, 2011, after numerous further pleadings and happenings, including Plaintiff Vision Bank executing a deed conveying its interest in the Ono Island Property to Plaintiff SE Property Holdings, LLC, the United States District Court for the Southern District of Alabama granted summary judgment to Plaintiff.

On August 19, 2011, Debtor filed a voluntary bankruptcy petition pursuant to Chapter 7 of the United States Bankruptcy Code. (Bk. Doc. 1).

On September 6, 2011, Debtor vacated the Ono Island Property.

On September 8, 2011, Plaintiffs took possession of the Ono Island Property.

On November 22, 2011, Plaintiffs filed their Complaint in this court alleging that Debtor inflicted damage to the Ono Island Property willfully, intentionally, and maliciously. Specifically, Plaintiffs allege that:

- Debtor removed light fixtures from the ground floor patio.
- Debtor damaged the siding of the house by hitting it with a hammer or similar object.
- Debtor removed bolts from stair railings.
- Debtor removed post caps from wharf.
- Debtor removed boat house door.
- Debtor cut boat lift wires.
- Debtor removed skimmer covers from pool area.
- Debtor removed or damaged pool equipment.
- Debtor removed porch light fixtures.
- Debtor allowed termite infestation.
- Debtor damaged locks, windows, doors and cabinets.
- Debtor cut speaker wires and inside light fixtures.
- Debtor removed light bulbs from interior of house.
- Debtor removed cabinet hardware and window hardware from some windows.
- Debtor damaged interior carpet.

3

- Debtor removed second floor balcony lights and ceiling fans.

- Debtor removed first floor balcony lights.

- Debtor removed exterior speakers.

- Debtor removed garage door sensors.

- Debtor cut sensor wires.

- Debtor removed batteries from thermostat.

- Debtor deposited a pile of feces in the middle of the living area of the house.

Debtor admits that he removed various items of personal property from the Ono Island Property including light bulbs, light covers, ceiling fans, and stereo speakers. However, Debtor asserts that he believed he had the right to remove them because they were his personal property that he installed over the years. Debtor denies that he inflicted any damage to the Ono Island Property willfully and maliciously and denies claims that he caused or was aware of the other items of damage claimed by Plaintiffs.

On September 28, 2012, Debtor filed this Motion for Summary Judgment and Brief in Support of [Debtor's] Motion for Summary Judgment alleging that there is no evidence to support a claim that Debtor damaged the Ono Island Property with the intent to injure Plaintiffs or that Debtor was substantially certain that damaging the Ono Island Property would injure Plaintiffs.

On October 16, 2012, Plaintiff SE Property Holdings, LLC, filed its Opposition to Motion for Summary Judgment.

On October 30, 2012, Debtor filed its Reply to Plaintiff's Opposition to Motion for Summary Judgment.

On November 8, 2012, a hearing on the Motion for Summary Judgment was held.

## CONCLUSIONS OF LAW

Plaintiff asserts that the debt owed by Debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[1] (AP. Doc. 1). Section 523(a)(6) provides, in pertinent part, that: "A discharge under section 727 . . . . of this title does not discharge an individual debtor from any debt . . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Plaintiffs assert in their Complaint that Debtor willfully and maliciously injured them when he willfully and maliciously damaged the Ono Island Property. Debtor asserts that he is entitled to summary judgement because Plaintiff has failed to come forward with any evidence that tends to show Debtor acted willfully and maliciously. (AP Docs. 32 & 36).

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, governs the procedures for summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). In reviewing a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. Feliciano v. City of Miami Beach, - - F. 3d - -, 2013 WL 425445, at *2 (11th Cir. 2013).

The plaintiff bears the burden of proof in a nondischargeability cause of action and must prove each element by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654 (1991). To establish a prima facie case under § 523(a)(6), Plaintiff must establish by a

---

[1] Plaintiff asserts that the entire deficiency balance owed to it is nondischargeable. Despite the court's skepticism that this is the case, it will give Plaintiff an opportunity to provide case law at trial on the issue. The issue will not be addressed in this opinion.

5

preponderance of the evidence that: (1) there is a debt owed to Plaintiff; (2) the debt owed is one for willful injury; and (3) the debt owed is one for malicious injury. See 11 U.S.C. § 523(a)(6). Therefore, in order to be successful on his Motion for Summary Judgment, Debtor must show that there is no genuine dispute of material fact and that, as a matter of law, Plaintiff has failed to bring forward any evidence that would tend to show that the debt owed is one for willful injury and that Plaintiff has failed to bring forward any evidence that would tend to show that the debt owed is one for malicious injury.

This court will first address whether Plaintiff has brought forward any evidence that would tend to show that the debt owed is one for willful injury. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 62, 118 S. Ct. 974, 977 (1998) (emphasis in original). Therefore, only acts committed with the "actual intent to cause injury" are willful. See id. "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64, 978. See also Maxfield v. Jennings (In re Jennings), 670 F. 3d 1329, 1334 (11th Cir. 2012) (quoting Hope v. Walker (In re Walker), 48 F. 3d 1161, 1163 (11th Cir. 1995)) ( stating that "proof of 'willfulness' requires 'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'"). Plaintiff has provided photographs of the damage to the Ono Island Property. (AP Doc. 41). Debtor does not deny the existence of the damage: He denies that he caused some of the damage, and further denies that any damage he caused was inflicted willfully and maliciously. A detailed accounting of the damage to the Ono Island Property and the Debtor's explanation for the damage follows:

6

- Light fixtures were removed from the ground floor patio. Debtor claims that he removed these because he considered the light fixtures his. He put the light fixtures in after he finished building the house. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 28-30).

- The siding of the house was damaged by hitting it with a hammer or similar object. Debtor claims that he did not do this, that he never even saw those marks on the siding before he left in September of 2011. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 30-31, Page 43).

- Bolts were removed from the stair railings. Debtor claims that railings were screwed in, not bolted in, and that it looks to him like the screws just need to be tightened up with a screwdriver. (Bk. Doc. 32, Excerpt of Debtor's Deposition, Page 31). Debtor further claims that he did not unscrew the handrails and he does not consider the loose handrails a safety hazard because the handrail goes up the bottom of the deck; it was not solely attached by the screws. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 32-33).

- Post caps were removed from the wharf. Debtor claims that he did not remove these, that over the years the post caps would either blow off or come up missing. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 33-34).
- The boat house door was removed. Debtor claims that he did not remove the boat house door. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 34-35).

- The boat lift wires were cut. Debtor claims that he did not cut the wires to the boat lift, and that the last time he used the boat lift was in 2004, before Hurricane Ivan hit the Gulf Coast. Debtor further claims that he had problems with vandalism on the pier where the boat lift was located. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 35-38).

- The skimmer covers were removed from the pool area. Debtor claims that he did not remove the skimmer covers. Debtor further claims that he was at the Ono Island Property between August 23 and September 9 of 2011, the time period when the simmers went missing, but that he did not notice when the skimmer covers went missing because he never went down to the pool. The pool was not being maintained so there was no reason for Debtor to go down to the pool area. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 38-39).

- Pool equipment was either removed or damaged. Debtor claims that he did not remove any pool equipment. Debtor claims that the area was flooded with salt water during one of the hurricanes before Ivan and that the equipment was rusted. Debtor further claimed that the Polaris pump had not worked in many, many years, so the

7

pool people cut those two PVC pipes shown in the picture so that the Polaris pump could be bypassed. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 39-43).

- The porch light fixtures were removed. Debtor admits that the removed the porch lights because he thought the porch lights were his property to take. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 43-44).

- The Ono Island Property became infested with termites. Debtor admits that he let the termite bond lapse five or six years ago. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Page 71). Debtor stated that he could not afford the renewal premium, so he let the termite bond lapse. Debtor further stated that he did nothing to introduce termites to the house and that he did nothing that would increase the possibility of a termite infestation. (AP Doc. 32, Affidavit of Douglas Jeffery Harless, Sr., Page 71).

- Locks, windows, doors and cabinets were damaged. Debtor did not specifically address these damages.

- The speaker wires and inside light fixtures were cut. Debtor did not specifically address these damages, although he admitted to taking the inside light fixtures and the speakers. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Page 44, Page 47).

- The light bulbs were removed from the interior of house. Debtor admits that he removed the light bulbs from the interior of the house because he thought they were his to take. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 44-45).

- Cabinet hardware and window hardware from some windows were removed. Debtor claims that he did not remove the cabinet hardware. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Page 45). Debtor further claims that he did not remove the window cranks. Debtor is not even sure if there ever were window cranks because the windows on the front of the house were inoperable because of the hurricane shutters. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Page 47).

- The interior carpet was damaged. Debtor claims that the interior carpet was damaged when an upstairs toilet stopped up and flooded. The carpet was made out of straw-like material and when it got wet, the carpet just came apart. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Page 45-47).

- The second floor balcony lights and ceiling fans were removed. Debtor admits that

he removed the second floor balcony lights and ceiling fans because he thought they were his property to take. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Page 47).

- The first floor balcony lights were removed. Debtor admits that he removed the first floor balcony lights because he thought they were his property to take. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 28-30).

- The exterior speakers were removed. Debtor admits that he removed the exterior speakers because he thought they were his property to take. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Page 44).

- The garage door sensors were removed. Debtor denies removing the garage door sensors. He states that during one of the hurricanes, probably Ivan, the garage had three feet of water in it and that the tracks were full of rust because of the flooding. Debtor further states that the garage door worked with the car remote, but that to get the garage door to come down, the button on the remote had to be held down. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 47-49).

- The sensor wires for the garage door were cut. Debtor denies cutting the sensor wires for the garage door. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 47-49).

- The batteries from the thermostat were removed. Debtor denies that he removed the batteries from the thermostat. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 49-50).

- A pile of feces was left in the middle of the living area of the house. Debtor denies knowledge of the pile of feces. (AP Doc. 32, Excerpts of Deposition of Douglas Jeffery Harless, Sr., Pages 50-51).

In addition to the specific explanations given above, Debtor also posits that some of the damage could have been done by guests of Debtor's daughter when she lived in the house during the early part of the summer of 2011. (Bk. Doc. 32, Affidavit of Douglas Jeffery Harless, Sr.). Also, Plaintiff did not take possession of the Ono Island Property until September 8, 2011, two days after Debtor vacated the premises. Debtor stated that he pulled the door shut, but did not lock it because the front door would not lock from the outside, a condition that had existed for several years. Debtor

posits that some of the damage could have been done to the property during those two days the house was vacant. (Bk. Doc. 32, Affidavit of Douglas Jeffery Harless, Sr.).

In their Opposition to Debtor's Motion for Summary Judgment, Plaintiffs produced the Declaration of Michael Randolph Powell ("Powell"). (Bk. Doc. 41). Powell examined the Ono Island Property on August 23, 2011, and took photographs of the property. Powell again examined the Ono Island Property on September 9, 2011, and took photographs of the property. Both sets of photographs are attached to Powell's Declaration. These photographs contradict the assertions of Debtor, or make the assertions of Debtor much less likely. For example, the boat house door was in place on August 23, 2011, but was removed prior to the photographs taken on September 9, 2011. The doors were removed during that one-month lapse between the photographs, which makes it much more likely that it was intentionally removed during that time period. In addition, the pool skimmer covers were in place on August 23, 2011, but were removed prior to the photographs taken on September 9, 2011. Pool skimmer covers have no value; it is highly unlikely that anyone took them as suggested by Debtor. The court would also note that the wires for the various fixtures Debtor removed were cut very short; it is not clear whether there was a legitimate reason for Debtor to cut the wires so short. These photographs raise a question about Debtor's state of mind when he was removing the various items from the Ono Island Property.

Plaintiff has shown that there is a genuine issue of material fact concerning whether Debtor willfully injured the Plaintiff when he damaged the Ono Island Property. Plaintiff has shown that the Ono Island Property was damaged, and Debtor admits that he inflicted some of the damage. Although Debtor explained the damage he caused, the court must weigh the credibility of Debtor's testimony in order to determine whether the explanations given are truthful. In addition, this court must also

10

Case 11-70045-CMS    Doc 49    Filed 03/21/13    Entered 03/21/13 16:16:53    Desc Main
Document    Page 10 of 11

weigh the credibility of Debtor's testimony to determine whether he is telling the truth when he denies inflicting the rest of the damage.  Determinations as to credibility are not appropriate in resolving a motion for summary judgment.  Feliciano v. City of Miami Beach, - - F. 3d - -, 2013 WL 425445, at *6 (11th Cir. 2013) (quoting Miller v. Harget, 458 F. 3d 1251, 1256 (11th Cir. 2006)) ("Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'").  Therefore, summary judgment is not appropriate in this case.

## CONCLUSION

Plaintiff has shown that there is a genuine issue of material fact concerning whether Debtor willfully injured the Plaintiff when he damaged the Ono Island Property.  Therefore, summary judgment is not appropriate in this case.  Debtor's Motion for Summary Judgment is **DENIED. DONE and ORDERED** this March 21, 2013.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge