# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

IN RE:

                                        BK 11-71761-CMS

**DOUGLAS JEFFERY HARLESS, SR.,**

        **Debtor.**

                                        AP 11-70045

**VISION BANK and**
**SE PROPERTY HOLDING, LLC.,**

        **Plaintiffs.**

**vs.**

**DOUGLAS JEFFERY HARLESS, SR.,**

        **Defendant.**

## MEMORANDUM OPINION

This adversary proceeding came before the court on August 14, 2013, for trial on the Complaint filed by Vision Bank and SE Property Holding LLC ("Plaintiffs"). Thomas W. Powe, Jr., appeared on behalf of Douglas Jeffery Harless, Sr. ("Debtor"); Richard M. Gaal appeared on behalf of Plaintiffs. After reviewing the evidence and the arguments of the parties, this court **SUSTAINS** Plaintiffs' objection to dischargeability pursuant to 11 U.S.C. § 523(a)(6) as to $3,996.54 of the debt owed to Plaintiffs.

## JURISDICTION

The district court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(a) & (b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Court for the Northern District of Alabama, signed July 16, 1984, as

1

Amended July 17, 1984 pursuant to 28 U.S.C. § 157(a). The bankruptcy court may enter an appropriate order and judgment pursuant to 28 U.S.C. § 157(b)(I).

## FINDINGS OF FACT

Debtor built a house on Ono Island in Baldwin County, Alabama ("Ono Island Property"). The Ono Island Property is located in an exclusive gated community in the Gulf Shores area of Alabama.[1] Debtor and his wife, Paula H. Harless, were the joint owners of the Ono Island Property, which was their beach house, not their primary residence. Debtor's former construction business, Harless Development Company, Inc., was the owner of a parcel of property located in Baldwin County, Alabama known as the Magnolias Subdivision. Both the Ono Island Property and the Magnolias Subdivision were subject to one or more mortgages held by Plaintiff Vision Bank.

On June 28, 2010, Plaintiff Vision Bank filed a Complaint in the United States District Court for the Southern District of Alabama seeking a judgment as to certain promissory notes executed by and/or guaranteed by Debtor, Debtor's wife, and Debtor's former business.[2]

On or about July 22, 2010, Plaintiff Vision Bank conducted a foreclosure sale as to its mortgage(s) on the Magnolias Subdivision.

On September 2, 2010, Plaintiff Vision Bank conducted a foreclosure sale as to its mortgage(s) on the Ono Island Property. (Plaintiffs' Exhibit 5).

On September 14, 2010, Debtor, Debtor's wife, and Debtor's former business filed their Amended Answer and Counterclaim alleging, among other things, unlawful foreclosure as to both

---

[1]Debtor and his wife were residents of Tuscaloosa, Alabama when the Ono Island Property was built and continue to reside in Tuscaloosa.

[2]Debtor owned a construction business, Harless Development Company, Inc., and it appears that his business was a casualty of the 2008 real estate collapse.

2

the Magnolias Subdivision and the Ono Island Property.

On September 20, 2010, Plaintiff Vision Bank filed a Second Amended Complaint seeking an order of ejectment as to the Ono Island Property.

On August 5, 2011, after numerous further pleadings and happenings,[3] the United States District Court for the Southern District of Alabama granted summary judgment to Plaintiffs.

On August 19, 2011, Plaintiffs filed a motion in the United States District Court for the Southern District of Alabama for a writ of assistance to have Debtor ejected from the Ono Island Property. That same day, Debtor filed a voluntary bankruptcy petition pursuant to Chapter 7 of the United States Bankruptcy Code. (Bk. Doc. 1). Debtor's bankruptcy schedules reflect approximately $2.5 million in unsecured debt. Approximately $2.0 million of the unsecured debt is owed to Plaintiff Vision Bank.

On August 23, 2011, Plaintiffs filed a Motion for Relief from Stay to Proceed with Enforcement of Ejectment Action Against Debtor. (Bk. Doc. 20). Plaintiffs requested an expedited hearing. (Bk. Doc. 21).

On August 29, 2011, Michael Randolph Powell, an inspector/employee of Plaintiff SE Property Holding, LLC, drove to the Ono Island Property. He pulled into the driveway and then almost immediately turned around and left. He did not get out of his vehicle and did not see Debtor. After traveling to and inspecting other properties, Mr. Powell returned to his office, which was located at Plaintiff Vision Bank's Foley Branch. Sometime after his return to the office, Mr. Powell was contacted by the receptionist, who informed him that someone was in the lobby claiming they

---

[3]By this point Plaintiff Vision Bank had executed a deed conveying its interest in the Ono Island Property to Plaintiff SE Property Holding, LLC.

3

had hit his car. When Mr. Powell came downstairs, the gentleman claiming to have hit his car asked if they could go outside to talk. Once outside, the gentleman got very close to Mr. Powell, informed Mr. Powell that he was Douglas Harless, informed Mr. Powell that he saw Mr. Powell drive onto the Ono Island Property, and asked if Mr. Powell had seen everything Mr. Powell needed to see. Debtor then got into his vehicle and drove away. It became clear at that point that Debtor had not hit Mr. Powell's car, and that the story was merely a ruse to get Mr. Powell to come downstairs. Mr. Powell testified that he felt intimidated and threatened by Debtor's actions. Although Debtor disputed that his actions were intimidating or threatening, he did not dispute that the conversation took place. Debtor testified that he was at the Ono Island Property preparing to move out when he saw a car pull into his driveway. He further testified that he became concerned that a thief was checking out the house to later rob it. While facially plausible, Debtor's explanation does not explain how he happened to discover Mr. Powell's car at the bank parking lot or why Debtor did not call the police.

On September 6, 2011, the Motion for Relief from Stay was heard by this court. At such hearing, Debtor consented to the Motion and announced that he had vacated the Ono Island Property.

On September 8, 2011, Plaintiffs took possession of the Ono Island Property.

On November 22, 2011, Plaintiffs filed the Complaint in this court alleging that Debtor inflicted damage to the Ono Island Property willfully, intentionally, and maliciously. Specifically, Plaintiffs allege that:

- Debtor removed light fixtures from the ground floor patio.
- Debtor damaged the siding of the house by hitting it with a hammer or similar object.
- Debtor removed bolts from stair railings.
- Debtor removed post caps from wharf.
- Debtor removed boat house door.

4

- Debtor cut boat lift wires.
- Debtor removed skimmer covers from pool area.
- Debtor removed or damaged pool equipment.
- Debtor removed porch light fixtures.
- Debtor allowed termite infestation.
- Debtor damaged locks, windows, doors and cabinets.
- Debtor cut speaker wires.
- Debtor removed inside light fixtures.
- Debtor removed light bulbs from interior of house.
- Debtor removed cabinet hardware and window hardware from some windows.
- Debtor damaged interior carpet.
- Debtor removed second floor balcony lights and ceiling fans.
- Debtor removed first floor balcony lights.
- Debtor removed exterior speakers.
- Debtor removed garage door sensors.
- Debtor cut sensor wires.
- Debtor removed batteries from thermostat.
- Debtor deposited a pile of feces in the middle of the living area of the house.

The court will review the facts surrounding the various claims of damage asserted by Plaintiffs:

- **Removal of lights, ceiling fans, speakers and light bulbs**. The photographs submitted by Plaintiffs show that the outside light fixtures, ceiling fans, exterior speakers, the interior light fixtures and light bulbs were removed sometime between August 9, 2011, and September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000001 & 000008 & 000011 & 000012 & 000013 & 000014 & 000015 & 000016). Debtor admitted that he removed these items but asserted that he had a right to remove them as he had installed them after the house was constructed. He testified that he still has the fixtures in storage.

- **Cutting of speaker wires.** The photographs submitted by Plaintiffs show that the outdoor speaker wires on the 2nd floor balcony were cut sometime before September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000013). The photographs also show that some first floor speaker wires were cut short sometime before September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000010). Debtor admits that he removed the speakers that were attached to the wires.

- **Removal of garage door sensors and the cutting of the sensor wires.** The photographs submitted by Plaintiffs show that the garage door sensors were removed and the wires cut sometime prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000017). Mr. Powell testified that he saw some of the garage door equipment in the

5

bay on one of his numerous trips to the Ono Island Property. Debtor denied that he removed the garage door equipment and speculated that the garage door equipment was damaged when the garage was flooded. Debtor's testimony is inconsistent with the time line established by Mr. Powell's testimony. This court found the testimony of Mr. Powell more credible.

- **Damage to siding.** The photographs submitted by Plaintiffs show the damage to the siding sometime prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000002 & 000006 & 000007). The damage consists of multiple small, circular dents. Plaintiffs speculate that the dents were made by a hammer, but there is no evidence of this. There is also no evidence of when the damage occurred or under what circumstances.

- **Removal of bolts from stair railings**. The photographs submitted by Plaintiffs show that the stair railings were loose sometime prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000002). Plaintiffs speculate that Debtor removed the bolts from the stair railings and that is why the stair railings are loose. However, an examination of the photographic evidence contradicts this. First, the photograph shows that the stair railings are held in place by screws, not bolts, which is consistent with Debtor's testimony at trial. Second, the screws are visible in the photograph, so they were not removed as alleged by Plaintiffs. There is no evidence that Debtor loosened the screws.

- **Removal of post caps from wharf.** The photographs submitted by Plaintiffs show that the post caps were removed from the wharf sometime between August 9, 2011, and September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000003). This is inconsistent with Debtor's testimony that he believed the post caps were blown away during a storm. Given that the post caps were removed during a time period when the relationship between Debtor and Plaintiffs was contentious, it seems more likely that Debtor removed the post caps himself.

- **Removal of the boat house door.** The photographs submitted by Plaintiffs show that the boat house door was missing on September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000003). The caption states that the boat house door was there on August 9, 2011, but there was no photographic evidence of this assertion. However, Mr. Powell testified that to the best of his recollection the boat house door was in place on August 9, 2011. Debtor could not recall what happened to the boat house door, but speculated that it was torn up during Ivan, a strong hurricane that hit Mobile in 2004. Debtor testified that the door was put back in place sometime after Ivan, and that he did not remove the door after it was replaced. This is inconsistent with the time line established by Mr. Powell's testimony. This court found the testimony of Mr. Powell more credible.

6

- **Cutting wires to boat lift**. The photographs submitted by Plaintiffs show that the wires to the boat lift were cut sometime before September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000004). Debtor testified that the pier and boat house were damaged in 2004 during a storm. The storm was so strong that the pier was damaged and the electrical conduit running to the boat house was torn out of the ground. The pier was replaced. but the electricity was never rerun to the boat house. Debtor further testified that he had not had a boat at the Ono Island Property since 2004 and therefore had not used the boat house to store his boat since 2004. Debtor's testimony was credible: There would be no reason for Debtor to cut the wires to the boat lift since the boat lift was not receiving electricity.

- **Removal of skimmer covers from swimming pool area.** The photographs submitted by Plaintiffs show that the skimmer covers were removed from the swimming pool area sometime between August 23, 2011, and September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000005). Debtor testified that he did not know what happened to the skimmer covers between those two dates. Given that the skimmer covers were removed during a time period when the relationship between Debtor and Plaintiffs was deteriorating, it seems more likely that Debtor removed the skimmer covers himself.

- **Removal of and/or damage to pool equipment**. The photographs submitted by Plaintiffs show that some of the pool equipment was removed and/or damaged sometime before August 23, 2011, while Debtor was still in possession of the Ono Island Property. (Plaintiffs' Exhibit 1, SEPH 000006). SEPH 000006 is a picture of the pool equipment on August 23, 2011.[4] It shows an empty place between two pieces of equipment, as well as PVC pipes which have been cut off. Debtor testified that the equipment on the right in the photograph is the pool heater. The equipment on the far left is the filter system. The Polaris cleaning equipment used to be located in the middle. It was the Debtor's testimony that the Polaris cleaning system did not work and was removed by the pool maintenance company in the past. The pool was used without the automatic cleaner and cleaned manually until the pump gave out in the summer of 2010. Again Debtor testified that he did not have the money to replace the pump and did not use the pool in the summer of 2011. Photographs of the pool clearly show the build-up of algae. Plaintiffs presented no evidence that contradicted Debtor's accounts of events, and the court found the Debtor's testimony credible.

Plaintiffs presented testimony that there were two sago palms found in the bottom of the pool when the pool was drained on September 19, 2011. (Plaintiffs' Exhibit 2,

_____

[4]SEPH 000027 is a duplicate of SEPH 000006.

Invoice #9281).[5] On August 9, 2011, there were two sago palms next to the pool. (Plaintiffs' Exhibit 1, SEPH 000026). The palms were still there on August 23, 2011. (Plaintiffs' Exhibit 1, SEPH 000005). Debtor offered three photographs in support of his testimony that the sago palms shown by the pool at the Ono Island Property are now located in front of his son's office in Tuscaloosa, and that they were not thrown into the pool at the Ono Island Property. (Debtor's Exhibits 10, 11, & 12). This court finds the Debtor's testimony credible.[6]

- **Allowance of termite infestation.** The photographs submitted by Plaintiffs show that there was termite damage to the Ono Island Property as of September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000009). Plaintiffs assert that Debtor allowed the termite bond to expire out of spite and that such expiration resulted in termite damage. Debtor admits that he allowed the termite bond to expire, but denies the motivation espoused by Plaintiffs. Debtor testified that he allowed the termite bond to lapse when he could no longer afford to pay the premiums. There is no evidence as to when the termite bond expired, but Debtor's financial difficulties started in 2008. Debtor's schedules reflect that he could not pay his 2008 federal income taxes and that creditors began suing him as early as 2009. This is consistent with the Defendant's testimony that he did not have the money to continue maintaining the termite bond, and the court finds this testimony credible.

- **Damage to locks, windows, doors and cabinets.** The photographs submitted by Plaintiffs show that a door lock was broken on two different doors sometime prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000009 & 000010). The photographs also show that a top bolt to a French door was damaged prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000017). The photographs also show that a cabinet door was broken off prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000009). There were no photographs of any damage to the windows other than the missing hand cranks which are addressed in a separate section.

- **Removal of cabinet hardware and window hardware.** The photographs submitted by Plaintiffs show that numerous cabinet hardware and window hardware were removed sometime before September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000011 & 000012).

The missing window hardware are window cranks which open the windows by rolling the windows out. Debtor testified that the windows could not be opened due

---

[5]Invoice #9281 was dated September 19, 2011.

[6]It should be noted that the sago palms in Plaintiffs' photographs appear to be in the same pots as the sago palms shown in Debtor's photographs.

to the plantation shutters on the outside of the house.[7]  It was his testimony that he was not sure that the handles were ever put on the windows to begin with, but if they were, they were probably removed to allow the shades on the window to work.  The court found this explanation credible.

The same cannot be said concerning the missing cabinet hardware.  The two bathroom cabinets shown in SEPH 000011 and SEPH 000012 have no pulls on the drawers and doors.  While normal wear and tear could result in some pulls being missing since the house was constructed in 2001, normal wear and tear could not result in every single pull being missing.  It is much more likely that Debtor removed the cabinet pulls himself.

- **Damage to interior carpet and hardwood floors.**  The photographs submitted by Plaintiffs show that the carpet was pulled up at the seams in bedroom 1, bedroom 2, and bedroom 3 sometime before September 9, 2011.  (Plaintiffs' Exhibit 1, SEPH 000011 & 000012).  Debtor described the carpet as being made of a grass-like material, which was installed in the house when it was originally constructed.  He also testified that there was a leak in the upstairs bathroom which caused the carpet to get wet and to begin to unravel.  It was his testimony that this occurred in 2005 at a time when his daughter was ill and the leak was not discovered until it came through on the first floor of the house.

  Plaintiffs submitted a photograph showing that the floor receptacle covers were removed sometime before September 9, 2011.  (Plaintiffs' Exhibit 1, SEPH 000010).  Debtor testified that the first floor flooring was pine wood, but that he was not aware of any damage to the floor.  Invoice #F0003787 from W&W Flooring and Design does show the hardwood floors and carpet were refinished and replaced September 7, 2012, approximately a year after the Defendant moved out of the house at a time when the bank was preparing to sell the house.

- **Removal of battery from thermostat.**  The photographs submitted by Plaintiffs show that the battery was removed from the thermostat sometime prior to September 12, 2011.  (Plaintiffs' Exhibit 1, SEPH 000018).

In addition to the photographs depicting the damage to the Ono Island Property, Plaintiffs

also submitted invoices totaling $26,456.17 for actual costs that it incurred for repairs to the Ono

Island Property.  They were admitted into evidence collectively as Plaintiffs' Exhibit 2.  A summary

---

[7]The plantation shutters are shown in some of the photographs submitted as Plaintiffs' Exhibit 1.

9

follows:

| Name | Invoice # | Date | Amount | Nature of repairs |
|------|-----------|------|--------|-------------------|
| Infinity Repairs | 263 | 1-30-12 | $1,360 | This was to replace the missing boathouse door, fill and paint the alleged hammer holes in the exterior of the house and replace 2 garage door openers. |
| Infinity Repairs | 377 | 7-8-12 | $100 | The Plaintiffs claim $100 for replacing the batteries in the smoke detectors at the Ono Island house. |
| Infinity Repairs | 397 | 7-30-12 | $860 | For replacing an entry door to the garage, along with hardware and repairing trim board and replacing sheetrock, all of which appears to be outside work. |
| Glass Systems of Alabama | 921 | 8-21-12 | $367.17 | To replace 2 window crank handles, 2 dead bolt mortices and 2 door locks. |
| Mathes of Alabama | 154007-00 | 10-5-12 | $3,596.74 | Replacement of light fixtures, ceiling fans and light bulbs. |
| W &W Flooring & Design | FO003787 | 9-7-12 | $12,576 | Refinishing hardwood floors, installing hardwood floors and removing carpet |

10

| | | | | |
|---|---|---|---|---|
| Infinity Repairs | 177 | 9-22-11 | $140 | Replacing 9 spotlight bulbs in the Ono Island kitchen |
| Infinity Repairs | 171 | 9-18-11 | $2,100 | Repair of exterior wood, claimed to have to been caused by either termite damage or rot. This included the reattachment of the loose handrail. |
| Infinity Repairs | 458 | 10-15-12 | $2,130 | Replace the caps on the pilings, as well as repair an archway and install shoe molding after new flooring had been installed in the upstairs bedrooms. |
| Gold Coast Pools & Spa | 9281 | 9-19-11 | $2,179.45 | For what was described as getting the swimming pool back up to appropriate conditions, including cleaning the pool and replacing pool hardware. Included in this invoice is cleaning, chemicals, and related pool supplies necessary to get the pool operational again. |
| Gold Coast Pools & Spa | 9282 | 9-21-11 | $591.81 | Installing a new filtering system on the pool |
| Gold Coast Pools & Spa | 10281 | 10-15-12 | $455 | Draining the pool and |

Case 11-70045-CMS   Doc 68   Filed 11/27/13   Entered 11/27/13 13:56:20   Desc Main
Document   Page 11 of 25

looking for a leak in the pool. This was approximately a year after the Defendant had left the property.

Debtor admits that he removed various items of personal property from the Ono Island Property including light bulbs, light covers, ceiling fans, and stereo speakers. However, Debtor asserts that he believed he had the right to remove them because they were his personal property that he installed over the years. Debtor denies that he inflicted any damage to the Ono Island Property willfully and maliciously and denies claims that he caused or was aware of the other items of damage claimed by Plaintiffs.

## CONCLUSIONS OF LAW

Plaintiffs seek a determination that the $26,456.17 spent on repairing the Ono Island Property should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

The plaintiff bears the burden of proof in a nondischargeability cause of action and must prove each element by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654 (1991). To establish a prima facie case under § 523(a)(6), Plaintiffs must establish by a preponderance of the evidence that: (1) there is a debt owed to Plaintiffs; (2) the debt owed is one for willful injury; and (3) the debt owed is one for malicious injury. See 11 U.S.C. § 523(a)(6).

This court will first address whether Plaintiffs have met their burden of proving that the damage done to the Ono Island Property was willful. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 62, 118 S. Ct.

974, 977 (1998) (emphasis in original). Therefore, only acts committed with the "actual intent to cause injury" are willful. See id. "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64, 978. See also Maxfield v. Jennings (In re Jennings), 670 F. 3d 1329, 1334 (11th Cir. 2012) (quoting Hope v. Walker (In re Walker), 48 F. 3d 1161, 1163 (11th Cir. 1995)) ( stating that "proof of 'willfulness' requires 'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'"). Plaintiffs provided photographs of the damage to the Ono Island Property. (AP Doc. 41). Debtor does not deny the existence of the damage. He denies that he caused some of the damage, and further denies that any damage he caused was inflicted willfully and maliciously. A detailed accounting of the damage to the Ono Island Property and the Debtor's explanation for the damage follows:

- **Removal of lights, ceiling fans, speakers and light bulbs**. The photographs submitted by Plaintiffs show that the outside light fixtures, ceiling fans, exterior speakers, the interior light fixtures and light bulbs were removed sometime between August 9, 2011, and September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000001 & 000008 & 000011 & 000012 & 000013 & 000014 & 000015 & 000016). Debtor admitted that he removed these items, but asserted that they were his that he had installed after the house was constructed and that he had a right to remove these. He testified that he still has them in storage.

  Debtor had no right to remove the lights, ceiling fans, speakers, and lightbulbs because they constitute fixtures under Alabama law:

  > When doubt arises as to whether or not a certain piece of property is a fixture, this doubt must be decided by the circumstances of each individual case, as they may be influenced by certain cardinal rules which have now become criteria for the decision of the question. If the article in question meets the requirements of these rules, its character as a fixture is determined. These rules, as gathered from the adjudicated cases, have been succinctly stated as follows: (1) Actual annexation to the realty or to something appurtenant thereto; (2) appropriateness to the use or purposes of that part of the realty with which it is connected; (3) the intention of the party making the

13

annexation of making permanent attachment to the freehold. This intention of the party making the annexation is inferred (a) from the nature of the article annexed; (b) the relation of the party making the annexation; (c) the structure and mode of annexation; (d) the purposes and uses for which the annexation has been made.

Langston v. State, 11 So. 334, 335 (Ala. 1892). Per the requirements set forth in Langston, the light fixtures, ceiling fans, and speakers were fixtures as they were attached to the real property via wires, they were necessary for the enjoyment of the property, and Debtor intended the annexation to be permanent. See, e.g., Farmers & Merchants Bank v. Sawyer, 163 So. 657, (Ala. Ct. App. 1935) (holding that light fixtures were fixtures under Alabama law). The fact that debtor replaced the fixtures with cheaper versions shows that he knew a house is expected to come equipped with fixtures.

Contrary to his assertions, this court finds that Debtor was aware that the lights, ceiling fans, and speakers were fixtures under Alabama law and was aware that he had no legal right to remove them from the Ono Island Property. Debtor was in the construction/development business for over 20 years, and knew that light fixtures and ceiling fans normally move with the real estate. Debtor knew he was taking Plaintiffs personal property when he removed the fixtures Given that the relationship between Debtor and Plaintiffs was deteriorating during the time period that the light fixtures were removed, this court finds that implicit in Debtors actions was an intent to cause injury to Plaintiffs without just cause or excuse. Therefore, Plaintiffs proved that Debtor willfully injured Plaintiffs when Debtor removed the fixtures from the Ono Island Property.

- **Cutting of speaker wires.** The photographs submitted by Plaintiffs show that the outdoor speaker wires on the 2nd floor balcony were cut sometime before September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000013). The photographs also show that some first floor speaker wires were cut short sometime prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000010). Debtor admitted that he removed the speakers. As a result, this court finds that he cut the wires short when he removed them. Debtor was in the construction/development business for over 20 years and would know that cutting speaker wires short would cause damage. Given that the relationship between Plaintiffs and Debtor was deteriorating when the speakers were removed and the speaker wires cut, this court finds that implicit in Debtor's actions was an intent to cause injury to Plaintiffs without just cause or excuse. Therefore, Plaintiffs proved that Debtor willfully injured Plaintiffs when Debtor cut the speaker wires at the Ono Island Property.

- **Removal of garage door sensors and the cutting of the sensor wires.** The photographs submitted by Plaintiffs show that the garage door sensors were removed

14

and the wires cut sometime prior to December 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000017). Mr. Powell testified that he saw some of the garage door equipment in the bay. Debtor denied that he removed the garage door equipment and speculated that the garage door equipment was damaged when the garage was flooded. This is inconsistent with the time line established by Mr. Powell's testimony. This court found the testimony of Mr. Powell more credible and finds that Debtor removed the garage door sensors and cut the sensor wires shortly before moving out of the Ono Island Property. Given that the relationship between Plaintiffs and Debtor was deteriorating when the garage door sensors were removed and the sensor wires were cut, this court finds that implicit in Debtor's actions was an intent to cause injury to Plaintiffs without just cause or excuse. Therefore, Plaintiffs proved that Debtor willfully injured Plaintiffs when Debtor removed the garage door sensors and cut the sensor wires at the Ono Island Property.

- **Damage to siding.** The photographs submitted by Plaintiffs show the damage to the siding occurred sometime prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000002 & 000006 & 000007). The damage consists of multiple small, circular dents. Plaintiffs speculate that the dents were made by a hammer, but there is no evidence of this. There is also no evidence of when the damage occurred or under what circumstances. In short, there is no evidence that Debtor damaged the exterior siding. Therefore, Plaintiffs failed to prove that Debtor willfully injured Plaintiffs by damaging the siding at the Ono Island Property.

- **Removal of bolts from stair railings**. The photographs submitted by Plaintiffs show that the stair railings are loose. (Plaintiffs' Exhibit 1, SEPH 000002). Plaintiffs speculate that Debtor removed bolts from the stair railings and that is why the stair railings are loose. However, an examination of the photographic evidence contradicts this. First, the photograph shows that the stair railings are held in place by screws, not bolts, which is consistent with Debtor's testimony at trial. Second, the screws are visible in the photograph, so they were not removed as alleged by Plaintiffs. There is no evidence that Debtor loosened the screws. Therefore, Plaintiffs failed to prove that Debtor willfully injured Plaintiffs by removing the bolts from the stair railings at the Ono Island Property.

- **Removal of post caps from wharf.** The photographs submitted by Plaintiffs show that the post caps were removed from the wharf sometime between August 9, 2011, and September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000003). This is inconsistent with Debtor's testimony that he believed the post caps were blown away during a storm. Given that the post caps were removed during a time period when the relationship between Debtor and Plaintiff Vision Bank was deteriorating, it seems more likely that Debtor removed the post caps himself. As such, this court finds that implicit in Debtor's actions was an intent to cause injury to Plaintiffs without just cause or excuse. Therefore, Plaintiffs proved that Debtor willfully injured Plaintiffs

15

when Debtor removed the post caps from the wharf at the Ono Island Property.

- **Removal of the boat house door.** The photographs submitted by Plaintiffs show that the boat house door was missing on September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000003). The caption states that the boat house door was there on August 9, 2011, but there was no photographic evidence of this assertion. However, Mr. Powell testified that to the best of his recollection the boat house door was in place on August 9, 2011. Debtor could not recall what happened to the boat house door, but speculated that it was torn up during Ivan, a strong hurricane that hit Mobile in 2004. Debtor testified that the door was put back in place sometime after Ivan, and that he did not remove the door after it was replaced. This is inconsistent with the time line established by Mr. Powell's testimony. This court found the testimony of Mr. Powell more credible and finds that the boat house door was removed sometime between August 9, 2011 and September 9, 2011. Given that the relationship between Plaintiffs and Debtor was deteriorating when the boat house door was removed, this court finds that implicit in Debtor's actions was an intent to cause injury to Plaintiffs without just cause or excuse. Therefore, Plaintiffs proved that Debtor willfully injured Plaintiffs when Debtor removed the boat house door at the Ono Island Property.

- **Cutting wires to boat lift**. The photographs submitted by Plaintiffs show that the wires to the boat lift were cut sometime before September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000004). Debtor testified that the pier and boat house were damaged in 2004 during a storm. The storm was so strong that the pier was damaged and the electrical conduit running to the boat house was torn out of the ground. The pier was replaced. but the electricity was never rerun to the boat house. Debtor further testified that he had not had a boat at the Ono Island Property since 2004 and therefore had not used it to store his boat. Debtor's testimony was credible: There would be no reason for Debtor to cut the wires to the boat lift since the boat lift was not receiving electricity. Plaintiffs failed to prove that Debtor caused the damage alleged. Therefore, Plaintiffs failed to prove that Debtor willfully injured Plaintiffs by cutting the wires to the boat lift at the Ono Island Property.

- **Removal of skimmer covers from swimming pool area.** The photographs submitted by Plaintiffs show that the skimmer covers were removed from the swimming pool area sometime between August 23, 2011, and September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000005). Debtor testified that he did not know what happened to the skimmer covers between those two dates. This court did not find Debtor's testimony about the skimmer covers credible, and finds that Debtor removed the skimmer covers. Given that the relationship between Plaintiffs and Debtor was deteriorating when the skimmer covers were removed, this court finds that implicit in Debtor's actions was an intent to cause injury to Plaintiffs without just cause or excuse. Therefore, Plaintiffs proved that Debtor willfully injured

16

Plaintiffs when Debtor removed the skimmer covers from the swimming pool area at the Ono Island Property.

- **Removal of and/or damage to pool equipment**. The photographs submitted by Plaintiffs show that some of the pool equipment was removed and/or damaged sometime before August 23, 2011, while Debtor was still in possession of the Ono Island Property. (Plaintiffs' Exhibit 1, SEPH 000006). SEPH 000006 is a picture of the pool equipment on August 23, 2011.[8] It shows an empty place between two pieces of equipment, as well as PVC pipes which have been cut off. Debtor testified that the equipment on the right in the photograph is the pool heater. The equipment on the far left is the filter system. The Polaris cleaning equipment used to be located in the middle. It was the Debtor's testimony that the Polaris cleaning system did not work and was removed by the pool maintenance company in the past. The pool was used without the automatic cleaner and cleaned manually until the pump gave out in the summer of 2010. Again Debtor testified that he did not have the money to replace the pump, and cleaned the pool manually as long as he could. Photographs of the pool clearly show the build-up of algae as early as August 23, 2011, which indicates that the pool was not being cleaned properly for quite some time. The court found the Debtor's testimony credible and Plaintiffs presented no evidence to contradict Debtor's account of events. As such, this court finds that the pool equipment was removed because it no longer worked and not because Debtor had any desire to cause injury to Plaintiffs. This court further finds that Debtor did not replace the pool equipment because he could not afford to, not because he had any desire to cause injury to Plaintiffs. Recall that Debtor's financial difficulties started in 2008. Debtor's schedules reflect that he could not pay his 2008 federal income taxes and that creditors began suing him as early as 2009.

Numerous courts have found that failure to maintain collateral is not enough to prove a willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6). Cutler v. Lazzara (In re Lazzara), 287 B.R. 714, 723-24 (Bankr. N.D. Ill. 2002) (listing cases). "In this regard, persons intending to cause harm do not normally do so by passive acts, such as failing to properly clean and maintain another's property." Knowles v. McGuckin (In re McGuckin), 418 B.R. 251, 256 (Bankr. N.D. Ohio 2009). This court agrees with those court. Failure to maintain the pool and pool equipment is the type of damage that occurs over a long period of time and resulted from passive acts, not overt acts. There is no evidence that the damage occurred during a time when the relationship between Debtor and Plaintiffs was deteriorating because of the foreclosure and forcible ejectment lawsuits. In the absence of any evidence of the damage caused by overt acts or that Debtor acted with intent to harm the Ono Island Property, Plaintiffs failed to prove that Debtor willfully injured Plaintiffs by failing to maintain the pool and pool equipment.

---

[8]SEPH 000027 is a duplicate of SEPH 000006.

17

The Plaintiffs presented testimony that there were two sago palms found in the bottom of the pool when the pool was drained on September 19, 2011. (Plaintiffs' Exhibit 2, Invoice #9281).[9] On August 9, 2011, there were two sago palms next to the pool. (Plaintiffs' Exhibit 1, SEPH 000026). The palms were still there on August 23, 2011. (Plaintiffs' Exhibit 1, SEPH 000005). Debtor offered three photographs in support of his testimony that those sago palms are now located in front of his son's office in Tuscaloosa, and that they were not thrown into the pool at the Ono Island Property. (Debtor's Exhibits 10, 11, & 12). This court found the Debtor's testimony credible.[10] As a result, this court finds that Debtor did not throw two sago palms into the pool. Therefore, Plaintiffs failed to prove that Debtor willfully injured Plaintiffs by throwing two sago palms into the pool at the Ono Island Property.

- **Allowance of termite infestation.** The photographs submitted by Plaintiffs show that there was some termite damage to the Ono Island Property as of September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000009). Plaintiffs assert that Debtor allowed the termite bond to expire out of spite and that such expiration resulted in termite damage. Debtor admits that he allowed the termite bond to expire, but denies the motivation espoused by Plaintiffs. Debtor testified that he allowed the termite bond to lapse when he could no longer afford to pay the premiums. There is no evidence as to when the termite bond expired, but Debtor's financial difficulties started in 2008. Debtor's schedules reflect that he could not pay his 2008 federal income taxes and that creditors began suing him as early as 2009. This is consistent with the Defendant's testimony that he did not have the money to continue maintaining the termite bond, and the court finds this testimony credible. As with the failure to maintain the pool and pool equipment, termite damage resulting from the lapse of a termite bond is the type of damage that occurs over a long period of time and was caused by passive acts, not overt acts. There is no evidence that the termite bond lapsed during a time when the relationship between Debtor and Plaintiffs was deteriorating. Plaintiffs failed to prove that Debtor willfully injured Plaintiffs by failing to maintain the termite bond.

- **Damage to locks, windows, doors and cabinets.** The photographs submitted by Plaintiffs show that a door lock was broken on two different doors sometime prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000009 & 000010). The photographs also show that a top bolt to a French door was damaged prior to September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000017). The photographs also show that a cabinet door was broken off prior to September 9, 2011. (Plaintiffs'

---

[9]Invoice #9281 was dated September 19, 2011.

[10]It should be noted that the sago palms in Plaintiffs' photographs appear to be in the same pots as the sago palms shown in Debtor's photographs.

Exhibit 1, SEPH 000009). There were no photographs of any damage to the windows other than the missing hand cranks which are addressed in a separate section. Debtor did not provide any explanation as to how the locks and cabinet door became damaged. The damage to the locks and the cabinet door are overt acts, not passive acts. Given that Debtor willfully injured Plaintiffs by removing light fixtures and ceiling fans, cutting speaker wires, removing post caps from the wharf, removing the boat house door, and removing skimmer covers from the pool area, this court finds that in the absence of a credible explanation Debtor also damaged the door locks and broke off the cabinet door with an intent to injure Plaintiffs. Plaintiffs proved that Debtor willfully injured Plaintiffs by damaging the locks and removing the cabinet door.

- **Removal of cabinet hardware and window hardware.** The photographs submitted by Plaintiffs show that numerous cabinet hardware and window hardware were removed sometime before September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000011 & 000012).

  The missing window hardware are window cranks which open the windows by rolling the windows out. Debtor testified that the windows could not be opened due to the plantation shutters on the outside of the house.[11] It was his testimony that he was not sure that the handles were ever put on the windows to begin with, but if they had been, they were probably removed so that the shades on the windows could work. This is a credible explanation concerning the window cranks. As a result, this court finds that Debtor did not remove the window cranks with an intent to injure Plaintiffs. Therefore, Plaintiffs failed to prove that Debtor willfully injured Plaintiffs by removing the window cranks.

  The same cannot be said concerning the missing cabinet hardware. The two bathroom cabinets shown in SEPH 000011 and SEPH 000012 have no pulls on the drawers and doors. While normal wear and tear could result in some pulls being missing since the house was constructed in 2001, normal wear and tear could not result in every single pull being missing. Given that Debtor willfully injured Plaintiffs by removing light fixtures and ceiling fans, cutting speaker wires, removing post caps from the wharf, removing the boat house door, removing skimmer covers from the pool area, damaging locks, and removing a cabinet door, it is much more likely than not that Debtor removed the cabinet pulls himself. As a result, this court finds that Debtor willfully injured Plaintiffs by removing all the cabinet hardware. Therefore, Plaintiffs proved that Debtor willfully injured Plaintiffs by removing the cabinet hardware.

---

[11]The plantation shutters are shown in some of the photographs submitted as Plaintiffs' Exhibit 1.

19

- **Damage to interior carpet and hardwood floors.** The photographs submitted by Plaintiffs show that the carpet was pulled up at the seams in bedroom 1, bedroom 2, and bedroom 3 sometime before September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000011 & 000012). Debtor described the carpet as being made of a grass-like material, which was installed in the house when it was originally constructed. He also testified that there was a leak in the upstairs bathroom which caused the carpet to get wet and to begin to unravel. It was his testimony that this occurred in 2005 at a time when his daughter was ill and the leak was not discovered until it came through on the first floor of the house. Debtor did not replace the carpet. As with the failure to maintain the pool and pool equipment as well as the failure to maintain the termite bond, the pulling up of carpet at the seams after water saturation is the type of damage that occurs over a long period of time and resulted from passive acts, not overt acts. There is no evidence that the water saturation of the carpet occurred during a time when the relationship between Debtor and Plaintiffs was deteriorating because of the foreclosure and forcible ejectment lawsuits. Plaintiffs failed to prove that Debtor willfully injured Plaintiffs by failing replace the carpet.

  Plaintiffs submitted a photograph showing that the floor receptacle covers were removed sometime before September 9, 2011. (Plaintiffs' Exhibit 1, SEPH 000010). Debtor testified that the first floor flooring was pine wood, but that he was not aware of any damage to the floor. Debtor did not provide any explanation as to why the floor receptacle covers were removed. The removal of the receptacle covers was an overt act, not a passive act. Given that Debtor willfully injured Plaintiffs by removing light fixtures and ceiling fans, cutting speaker wires, removing post caps from the wharf, removing the boat house door, removing skimmer covers from the pool area, damaging locks, and removing a cabinet door, this court finds that in the absence of a credible explanation Debtor also removed the floor receptacle covers with an intent to injure Plaintiffs. Therefore, Plaintiffs proved that Debtor willfully injured Plaintiffs by removing the floor receptacle covers.

- **Removal of battery from thermostat.** The photographs submitted by Plaintiffs show that the battery was removed from the thermostat sometime prior to December 12, 2011. (Plaintiffs' Exhibit 1, SEPH 000018). Debtor did not provide any explanation as to why the battery was removed from the thermostat. The removal of the battery was an overt act, not a passive act. Given that Debtor willfully injured Plaintiffs by removing light fixtures and ceiling fans, cutting speaker wires, removing post caps from the wharf, removing the boat house door, removing skimmer covers from the pool area, damaging locks, removing a cabinet door, and removing the floor receptacle covers, this court finds that in the absence of a credible explanation Debtor also removed the battery from the thermostat with an intent to injure Plaintiffs. Therefore, Plaintiffs proved that Debtor willfully injured Plaintiffs by removing the battery from the thermostat.

- **Allowance of water damage.** The photographs submitted by Plaintiffs did not show the water damage, but Plaintiffs are seeking the recovery of $860 for the cost of replacing an entry door to the garage, along with hardware and trim board, as well as the cost of replacing sheetrock. The testimony was that the items had to be replaced because they were damaged when water entered the Ono Island Property. As with the failure to maintain the pool and pool equipment, the failure to maintain the termite bond, and the failure to replace the upstairs carpet, water damage is the type of damage that occurs over a long period of time and was caused by passive acts, not overt acts. There is no evidence that the water damage occurred during a time when the relationship between Debtor and Plaintiffs was deteriorating. Plaintiffs failed to prove that Debtor willfully injured Plaintiffs by failing to stop the water leak.

The court will next address whether Debtor maliciously injured Plaintiffs. "As used in section 523(a)(6), 'malicious' means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill-will.'" <u>In re Walker</u>, 48 F. 3d at 1164 (quoting <u>Lee v. Ikner (In re Ikner)</u>, 883 F. 2d 986, 991 (11th Cir. 1989)). This court previously found that Debtor willfully injured Plaintiffs by removing light fixtures and ceiling fans, cutting speaker wires, removing post caps from the wharf, removing the boat house door, removing skimmer covers from the pool area, damaging locks, removing a cabinet door, removing the floor receptacle covers, and removing the battery from the thermostat. All of these acts occurred during a time period when the relationship between Debtor and Plaintiffs was deteriorating. Plaintiffs had foreclosed on the Magnolias Development and the Ono Island Property during a time period when Debtor was experiencing great financial difficulty. Debtor decided to fight the foreclosure and remained in possession of the Ono Island Property until shortly after Plaintiffs filed a forceful ejectment proceeding against Debtor. In addition, Debtor was in the construction/development business for over 20 years. He knew that he was acting in violation of Plaintiffs' property rights. Given the acrimonious nature of the relationship between the parties, and the fact that Debtor knew he was violating Plaintiffs' property rights, this court finds that Debtor maliciously injured Plaintiffs when he removed light fixtures and

ceiling fans, cut speaker wires, removed post caps from the wharf, removed the boat house door, removed skimmer covers from the pool area, damaged locks, removed a cabinet door, removed the floor receptacle covers, and removed the battery from the thermostat at the Ono Island Property. See Aliant Bank v. Gautney (In re Gautney), No. 12-80071-JAC-7, 2013 WL 414452, at *3 (Bankr. N.D. Ala. Jan. 31, 2013) (finding that the debtors were aware that the removal of fixtures was a violation of the plaintiff's property rights and that "the nature of the acts committed by the debtors implied a sufficient degree of malice for purposes of § 523(a)(6)").

Finally, the court will address whether Plaintiffs proved that Debtor owes them a debt for a willful and malicious injury. Plaintiffs rely on a collection of invoices submitted into evidence as Plaintiffs' Exhibit 2 to prove the costs incurred to fix the damage done to the Ono Island Property. A discussion of the invoices relating to the damage inflicted by Debtor willfully and maliciously follows.

- **Removal of lights, ceiling fans, speakers and light bulbs**. Plaintiffs' Exhibit 2 includes an invoice dated October 5, 2012, for replacement of light fixtures and ceiling fans, as well as light bulbs. The total invoice was for $3,596.74. The cost for the replacement fixtures is not out of line. Plaintiffs' Exhibit 2 also includes an invoice dated September 22, 2011, for the replacement of 9 spotlight bulbs in the kitchen. The total invoice was for $140.00. There was no invoice for the replacement of the speakers that Debtor removed. Plaintiffs are entitled to recover the full amount of both invoices.

- **Cutting of speaker wires.** Although Debtor damaged the speaker wires willfully and maliciously, Plaintiffs did not prove the damages associated with the repair of the speaker wires. None of the invoices admitted collectively as Plaintiffs' Exhibit 2 included an invoice for repair of the speaker wires. In addition, there was no testimony concerning how much it would cost to fix the speaker wires. Plaintiffs are not entitled to recover any money for the cutting of the speaker wires.

- **Removal of garage door sensors and the cutting of the sensor wires/Removal of boat house door.** Plaintiffs' Exhibit 2 includes an invoice from Infinity Repairs dated January 30, 2012, in the amount of $1,360 for the replacement of 2 garage door

openers, the replacement of the missing boathouse door, and the filling and painting of hammer holes on the exterior of the house. The invoice does not itemize the costs of these different repairs, so this court cannot separate out the cost of the repairs. In addition, there was no testimony concerning the itemization of any cost. Because this court found that the damage to the siding of the Ono Island Property was not done willfully and maliciously, Plaintiffs are not entitled to recover any money for the repair of the hammer holes on the siding. In the absence of itemization, this court cannot subtract out the cost of the repair to the siding. Therefore, Plaintiffs failed to prove the amount that they are entitled to for the replacement of the two garage door openers, and the replacement of the boathouse door.

- **Removal of post caps from wharf.** Plaintiffs' Exhibit 2 includes an invoice from Infinity Repairs dated October 15, 2012, in the amount of $2,130, for the replacement of the post caps, the repair of an archway and the installation of shoe molding after new flooring was installed in the upstairs bedrooms. The invoice does not itemize the costs of these different repairs, so this court cannot separate out the cost of the repairs. In addition, there was no testimony concerning the itemization of any cost. Because this court found that the damage to the upstairs carpet at the Ono Island Property was not done willfully and maliciously, Plaintiffs are not entitled to recover any money for the installation of shoe molding. In the absence of itemization, this court cannot subtract out the cost of the installation of the shoe molding. Therefore, Plaintiffs failed to prove the amount that they are entitled to for the replacement of the post caps from the wharf.

- **Removal of skimmer covers from swimming pool area.** Plaintiff's Exhibit 2 includes an invoice from Gold Coast Pools & Spas, LLC dated September 19, 2011, in the amount of $2,179.45. This invoices includes the cost of 2 skimmer lids, as well as the cost of replacing pool equipment and chemically treating the pool. This court previously found that Debtor willfully and maliciously removed the skimmer covers from the pool area. This court also previously found that Debtor did not willfully and maliciously injure Plaintiffs by failing to replace other pool equipment or by failing to clean and treat the pool. Therefore, Plaintiffs are only entitled to recover the cost of replacing the skimmer lids. The invoice is itemized and shows that the cost of the 2 skimmer lids is $27.30. The sales tax is $2.73.[12] Plaintiffs proved that they are entitled to recover $30.03 for the cost of the skimmer lids.

- **Damage to locks, windows, doors and cabinets.** Plaintiffs' Exhibit 2 includes an invoice from Glass Systems of Alabama dated August 21, 2012, in the amount of $367.17 for the replacement of 2 window cranks, 2 dead bolt mortices, and 2 door locks. The court previously found that Debtor broke the locks willfully and

---

[12]The sales tax was calculated by multiplying $27.30 by 0.10. The sales tax in Alabama is 10%.

maliciously, but did not remove the window cranks willfully and maliciously. Therefore, Plaintiffs are only entitled to recover damages for the replacement of the broken locks. The invoice itemizes the costs as follows: $34.00 for the window cranks; $170.88 for the deadbolt mortices; $38.00 for the door locks; $100.00 for labor; and $24.29 for sales tax. Based upon this invoice, Plaintiffs are entitled to recover $170.88 for the deadbolt mortices; $38.00 for the door locks; and $20.89 in sales tax.[13] The labor is not itemized; in the absence of itemization, this court cannot determine what portion of the labor cost was incurred in replacing the window cranks and what portion was incurred in replacing the deadbolt mortices and door locks. Plaintiffs proved that they are entitled to recover $229.77 for the cost of the deadbolt mortices and door locks.

Although Debtor removed the cabinet door willfully and maliciously, Plaintiffs did not prove the damages associated with the removal of the cabinet door. None of the invoices admitted collectively as Plaintiffs' Exhibit 2 included an invoice for the replacement of the cabinet door. In addition, there was no testimony concerning how much it would cost to replace the cabinet door. Plaintiffs are not entitled to recover any money for the removal of the cabinet door.

- **Removal of cabinet hardware.** Although Debtor removed the cabinet hardware willfully and maliciously, Plaintiffs did not prove the damages associated with the removal of the cabinet hardware. None of the invoices admitted collectively as Plaintiffs' Exhibit 2 included an invoice for the replacement of the cabinet hardware. In addition, there was no testimony concerning how much it would cost to replace the cabinet hardware. Plaintiffs are not entitled to recover any money for the removal of the cabinet hardware.

- **Removal of battery from thermostat.** Although Debtor removed the battery from the thermostat willfully and maliciously, Plaintiffs did not prove the damages associated with the removal of the battery. None of the invoices admitted collectively as Plaintiffs' Exhibit 2 included an invoice for the replacement of the battery from the thermostat.[14] In addition, there was no testimony concerning how much it would cost to replace the battery. Plaintiffs are not entitled to recover any money for the removal of the battery from the thermostat.

---

[13]Sales tax was calculated by adding $170.88 and $38.00, and multiplying the total by .10. The sales tax in Alabama is 10%.

[14]Plaintiffs' Exhibit 2 includes an invoice from Infinity Repairs dated July 8, 2012, in the amount of $100 for the replacement of batteries in the smoke detectors. None of the invoices include a charge for replacing the battery in the thermostat.

24

Plaintiffs have shown that they are entitled to recover $3,996.54 for the cost to repair damages willfully and maliciously caused by Debtor to the Ono Island Property.

## CONCLUSION

Plaintiffs proved that Debtor willfully and maliciously injured Plaintiffs by removing light fixtures and ceiling fans, cutting speaker wires, removing post caps from the wharf, removing the boat house door, removing skimmer covers from the pool area, damaging locks, removing a cabinet door, removing the floor receptacle covers, and removing the battery from the thermostat at the Ono Island Property. Plaintiffs further proved that they are entitled to recover $3,996.54 for the cost to repair the damages willfully and maliciously inflicted by Debtor at the Ono Island Property. Therefore, this court finds that $3,996.54 of the debt owed to Plaintiffs is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

**DONE and ORDERED** this November 27, 2013.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge

25